## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL CASE NO. |
| v. | : | 1:22-cr-00197-VMC-RGV |
| | : | |
| ENVISTACOM, LLC, ALAN | : | |
| CARSON, VALERIE HAYES, | : | |
| and PHILIP FLORES | : | |


## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendants Envistacom, LLC ("Envistacom"), Alan Carson ("Carson"),

Valerie Hayes ("Hayes"), and Philip Flores ("Flores"), collectively referred to as

"defendants," are charged in a three-count indictment with one count of

conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and two

counts of major fraud against the United States, in violation of 18 U.S.C. §§ 1031

and 2. [Doc. 1].[1]  Envistacom, Carson, and Hayes have filed motions for a bill of

particulars, [Docs. 30, 46, & 47], to which the government has filed a consolidated

response in opposition, [Doc. 84], and each of the moving defendants have filed a

reply in support of their motions, [Docs. 85, 86, & 88].  Hayes and Flores have filed

---

[1] The indictment also includes a forfeiture provision.  See [Doc. 1 at 12-13].  The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

motions to dismiss count one of the indictment, [Docs. 80 & 81], to which the government has filed a consolidated response in opposition, [Doc. 83], and Hayes filed a reply in support of her motion, [Doc. 87], which Flores has moved to adopt, [Doc. 89].   Envistacom has filed a motion to set a trial date, [Doc. 54], and subsequently moved to amend the trial date originally requested, [Doc. 90], and all of the co-defendants have moved to adopt and join these motions, [Docs. 55, 56, 91, 92, & 93].   For the reasons that follow, Flores' motion to adopt Hayes' reply in support of his motion to dismiss, [Doc. 89], is **GRANTED**; Carson's motion for a bill of particulars, [Doc. 47], is **DENIED**; Envistacom and Hayes' motions for a bill of particulars, [Docs. 30 & 46], are **GRANTED IN PART** and **DENIED IN PART**; the motions to set a trial date, [Docs. 54, 55, 56, 90, 91, 92, & 93], are hereby **DEFERRED** to the District Judge; and it is **RECOMMENDED** that the motions to dismiss count one, [Docs. 80 & 81], be **DENIED**.

## I. INTRODUCTION

On May 25, 2022, a grand jury in the Northern District of Georgia returned an indictment against the defendants, charging them with one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of major fraud against the United States, in violation of 18 U.S.C. §§ 1031 and 2.  [Doc. 1].  According to the indictment, Envistacom is a limited liability corporation with its principal place of business in the Northern District of Georgia, and Carson was

the Vice President of Envistacom, while Hayes was the Vice President of Special Programs at Envistacom, and Flores was the owner and founder of a Virginia corporation, referred to in the indictment as Co-Conspirator A. [Id. ¶¶ 17-20]. The indictment charges that the defendants identified and procured government contracts, awarded as sole-source set-aside contracts under the Small Business Administration's ("SBA") 8(a) program, the purpose of which "was to increase the number of government contracts awarded to small businesses owned and controlled by socially and economically disadvantaged individuals," by fraudulent means. [Id. ¶¶ 4, 27]. Specifically, the defendants allegedly coordinated in seeking the award of sole-source set-aside 8(a) contracts from the federal government through proposals submitted by Co-Conspirator A, Flores' corporation, by preparing bogus Independent Government Cost Estimates ("IGCEs") to ensure that Co-Conspirator A's proposal pricing would be lower than the IGCEs; preparing and procuring purported "competitive quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D, which were sham quotes that were intentionally higher than Co-Conspirator A's proposal prices and/or Envistacom's price quotes, to ensure the sole-source awards; concealing that Flores' wife owned Co-Conspirator B, and that Flores prepared Co-Conspirator B's sham quotes for the 8(a) sole-source awards to Co-Conspirator A; concealing that Envistacom sought and procured the purported "competitive

3

quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D; concealing that Envistacom, Carson, Hayes, and Flores prepared the IGCEs and other contract procurement documents for the 8(a) sole-source awards to Co-Conspirator A; and by making false statements, representations, and material omissions to federal government contracting officials regarding (i) the IGCEs being legitimate independent government cost estimates and (ii) Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D's quotes being "competitive," when they were either prepared by Flores in consultation with Hayes or the pricing therein was directed by Carson.  [Id. ¶ 27].

According to the indictment, on or about June 8, 2015, HHS Contract HHSP233201550029A ("HHS Contract l") was awarded to Co-Conspirator A for $829,618.50 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about June 8, 2015, to June 7, 2016, and Co-Conspirator A paid Envistacom approximately $735,000 as a subcontractor and/or vendor under HHS Contract 1 out of the approximately $829,618.50 paid by the U.S. government to Co-Conspirator A.  [Id. ¶¶ 11-12].  On or about September 25, 2015, HHS Contract HHSP233201500313A ("HHS Contract 2") was awarded to Co-Conspirator A for $3,515,987.72 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about September 22, 2015, to September 21, 2016, and Co-Conspirator A paid Envistacom approximately $2.7 million as a

4

subcontractor under HHS Contract 2 out of the approximately $3,515,987.72 paid by the U.S. government to Co-Conspirator A.  [Id. ¶¶ 13-14].  On or about September 28, 2015, HHS Contract HHSP233201500338A ("HHS Contract 3") was awarded to Co-Conspirator A for $3,542,270.10 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about September 28, 2015, until September 27, 2016, and Co-Conspirator A paid Envistacom approximately $3.2 million as a subcontractor under HHS Contract 3 out of the approximately $3,542,270.10 paid by the U.S. government to Co-Conspirator A.  [Id. ¶¶ 15-16].

In count one, the indictment charges that, in furtherance of the conspiracy, and in order to carry out the objects thereof, defendants, and other co-conspirators known and unknown to the Grand Jury, committed or caused the following overt acts, among others:

a. On or about March 5, 2015, Carson, Hayes, and Flores coordinated via email regarding Envistacom, Co-Conspirator A, and IGCE pricing;

b. On or about March 11, 2015, Carson communicated via email with Co-Conspirator C and Co-Conspirator D and requested quotes with specific pricing to support the government's price reasonableness determination;

c. On or about March 31, 2015, Hayes emailed Co-Conspirator E that "of course" the government cost (IGCE) "will be higher than what [Flores] bids";

d. On or about April 20, 2015, Hayes emailed Co-Conspirator E three purported "competitive quotes" to support the government's price reasonableness determination for HHS Contract 1, and

instructed Co-Conspirator E to "save over the files before sending" them to the Contracting Officer;

e. On or about May 27, 2015, Hayes communicated with Flores and Carson via email, notifying Flores that Carson would provide "at least one competitor quote" so that Flores would have it "to support due diligence and cost reasonableness" for HHS Contract 1;

f. On or about August 9, 2015, Hayes emailed Co-Conspirator F and Carson, requesting an "updated PWS, corresponding IGCE and the RFP verbiage" so that she could "brief" Flores and "ensure he understands" how Envistacom "desire[s] to proceed";

g. On or about August 10, 2015, Flores emailed Hayes a Co-Conspirator B quote that he said was "directly comparable, but higher than [Co-Conspirator E's] IGCE";

h. On or about August 10, 2015, Hayes emailed Co-Conspirator E with the "HHS Package" for HHS Contract 2, for Co-Conspirator E to provide to the Contracting Officer, including the "PWS, IGCE, competitive quotes, and draft RFP." Hayes noted that she "spoke with [ Flores] and he is fine with this effort" and directed Co-Conspirator E to "save over the files before sending" to the Contracting Officer;

i. On or about August 11, 2015, Hayes emailed Carson a purported "competitive quote" from Co-Conspirator B for HHS Contract 3; and

j. On or about October 25, 2016, Envistacom deposited the check from Co-Conspirator A to Envistacom/Action Capital for $402,533.67, for payment of Envistacom invoices 1884 (HHS Contract 2) and 1885 (HHS Contract 3) into Envistacom's Wells Fargo bank account controlled by Action Capital.

[Id. ¶ 28].

The indictment further charges defendants with two counts of major fraud against the United States in connection with HHS Contract 2 and HHS Contract 3. [Id. ¶¶ 29-40].  In count two, the indictment charges that on or about September 25, 2015, the United States, in a procurement of property and services, awarded HHS Contract 2 to Co-Conspirator A, the value of which was in excess of $ 1,000,000.00, and Envistacom was a subcontractor of Co-Conspirator A on HHS Contract 2.  [Id. ¶¶ 30-31].  In count three, the indictment charges that on or about September 25, 2015, the United States, in a procurement of property and services, awarded HHS Contract 3 to Co-Conspirator A, the value of which was in excess of $ 1,000,000.00, and Envistacom was a subcontractor of Co-Conspirator A on HHS Contract 3.  [Id. ¶¶ 36-37].  Both counts charge that:

> Beginning in or about September 2014, and continuing up to at least September 2015, in the Northern District of Georgia and elsewhere, in connection with the foregoing procurements, the defendants . . . did knowingly execute and attempt to execute the scheme and artifice with the intent to defraud the United States and to obtain money by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact in that the defendants committed and caused to be committed the following acts, and in doing so caused a gross loss to the government and a gross gain to [Envistacom] of greater than $500,000, by preparing and submitting false and fraudulent documents in connection with HHS Contract 2 [and HHS Contract 3], including false and fraudulent price quotes and IGCEs.

[Id. ¶¶ 34, 40].  The indictment specifies in both counts that defendants "devised a scheme and artifice to defraud the United States and to obtain money and

property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact," including by:

    a.    Concealing that the [IGCEs] and other contract procurement documents were prepared by Envistacom and Co-Conspirator A; and

    b.    Falsely representing that quotes used to support the IGCEs and Co-Conspirator A's proposal pricing were "competitive" quotes, when they were prepared by [Flores], Co-Conspirator C, or Co-Conspirator D in coordination with [Hayes and Carson], and [Flores, Carson, and Hayes'] involvement was concealed.

[Id. ¶¶ 32-33, 38-39].  Defendants have filed several pretrial motions, [Docs. 30, 46, 47, 80, & 81], which are now fully briefed and ripe for ruling.[2]

## II.  DISCUSSION

### A.  <u>Motions for a Bill of Particulars, [Docs. 30, 46, & 47]</u>

Envistacom, Carson, and Hayes have filed motions for a bill of particulars, [Docs. 30, 46, & 47], to which the government has filed a consolidated response in opposition, [Doc. 84], and each of the moving defendants have filed a reply in support of their motions, [Docs. 85, 86, & 88].  Envistacom seeks the following particulars:

    1)    The facts supporting an allegation that Envistacom had the intent to defraud the United States and agencies thereof;

---

[2] As previously noted, the pending motions to set a trial date, [Docs. 54 & 90], and to adopt and join those motions, [Docs. 55, 56, 91, 92, & 93], are deferred to the District Judge.

2) The specific dates and meetings or events (as well as participants) at which defendant Envistacom or its agents is alleged to have entered into an agreement with co-conspirators to defraud the United States;

3) The specific communications and/or documents that purport to show defendant Envistacom formed an agreement to defraud the United States;

4) The company representatives of Envistacom who allegedly entered into agreements to defraud the United States;

5) The facts supporting the assertion that Envistacom used "false and fraudulent pretenses, representations, and promises, as well as omissions of material fact" to defraud the United States;

6) The facts supporting the assertion that Envistacom "concealed that the [IGCEs] and other contract procurement documents were prepared by Envistacom";

7) The facts supporting the assertion that because the quotes "used to support the IGCE's" were allegedly prepared by [d]efendants, they were therefore not "competitive";

8) The facts supporting the assertion that quotes were "sham quotes" or "false or fraudulent quotes";

9) The facts supporting the assertion that Envistacom's involvement with the quotes was "concealed";

10) All facts and documents showing the gross loss actually suffered by the government as a result of Envistacom's alleged conduct;

11) The facts supporting the assertion that Envistacom "[i]dentified U.S. government procurements that could be awarded as sole-source set-aside contracts under SBA 8(a) program"[;] and

12) All facts or documents showing that Envistacom made a gross gain of greater than $500,000 from HHS Contracts 1, 2, and 3.

[Doc. 46-1 at 1-2].

Carson moves for the following particulars:

1) The facts supporting an allegation that [] Carson had the intent to defraud the United States and agencies thereof;

2) The specific dates and meetings or events (as well as participants) at which defendant [] Carson is alleged to have entered into an agreement with co-conspirators to defraud the United States;

3) The specific communications and/or documents that purport to show an agreement to defraud the United States involving defendant [] Carson;

4) The "false statements, representations, and material omissions" [] Carson made to federal government contracting officials regarding the IGCEs and the "competitive" quotes, including how, when, and to whom the statements were made;

5) The facts showing how [] Carson "concealed that the [IGCEs] and other contract procurement documents were prepared by Envistacom;"

6) The facts showing how the quotes referred to in Paragraph 27(d) of the Indictment were "sham quotes";

7) The facts supporting the assertion that the quotes were "false or fraudulent";

8) The facts supporting the assertion that [] Carson's involvement with the quotes was "concealed";

9) The facts supporting the assertion that [] Carson "[i]dentified U.S. government procurements that could be awarded as sole-source set-aside contracts under SBA 8(a) program";

10) All facts and documents showing the gross loss actually suffered by the government as a result of [] Carson's alleged conduct;

11) A list of any benefits the government claims [] Carson personally received as a direct result of his alleged participation in the charged fraudulent scheme against the United States; and

12) All facts and documents showing that Envistacom made a gross gain of greater than $500,000 from HHS Contracts 1, 2, and 3.

[Doc. 47-1 at 1-2].

Hayes moves for the following particulars:

1) The names of all "others" known to the [g]overnment who allegedly participated in the conspiracy, as alleged in Paragraph 27 of the Indictment.

2) The exact conspiratorial agreement the [g]overnment alleges was agreed to by the alleged co-conspirators.

3) All facts showing how each of the "competitive quotes" were "sham quotes," as alleged in Paragraph 27(d) & (e) of the Indictment.

4) All facts supporting the allegation that Envistacom allegedly concealed from the government that it had procured "competitive quotes" from alleged co-conspirators as alleged in Paragraph 27(f) of the Indictment.

5) All facts supporting the allegations that [defendants] concealed from the government that they purportedly prepared the IGCE and other government procurement documents as alleged in Paragraphs 27(g), 33(a) and 39(a) of the Indictment.

6) A detailed description of each alleged false statement or representation or material omission made to the government by the alleged co-conspirators as alleged in Paragraph 27(h) of the Indictment.

7) All facts supporting the claim of the existence of "other" overt acts alleged in Paragraph 28 of the Indictment.

8)  The names, employers, and job titles of the "others" who allegedly aided and abetted the Major Fraud as alleged in Paragraphs 32 and 38 of the Indictment.

9)  A list of the benefits the government claims [] Hayes received in exchange for her alleged actions in this case.

[Doc. 30-1 at 2-3].

In its consolidated response in opposition, [Doc. 84], the government argues that the motions should be denied because "the detailed indictment, the extensive discovery provided to defendants, and their own personal knowledge of the conduct at issue," provide defendants "the information they need to prepare a defense," [id. at 5].  In particular, the government asserts that "[t]he allegations in the indictment sufficiently describe the charges against the defendants," pointing out that "[t]he Background section of the indictment spans nearly three full pages, and identifies with specificity the contracts at issue," while "[t]he Manner and Means section details the alleged coordination of the defendants in creating procurement documents and sham quotes for the relevant contracts, as well as allegations of concealing the same."  [Id. at 4 (citations omitted)].  It also notes that "[t]he indictment includes no fewer than 10 alleged overt acts in furtherance of the conspiracy, most of which contain direct quotes that are contained in discovery already provided to the defendants," [id. (citation omitted)], adding that "[t]he discovery is contained in a searchable database," and "the government had

12

detailed pre-indictment discussions with the defendants regarding the government's allegations and evidence," [id. at 2].  Accordingly, the government maintains that defendants' motions "are an effort to obtain a detailed exposition of the United States' evidence and its legal theories, to which they are not entitled." [Id. at 5 (citations omitted)].

In their replies to the government's consolidated response, defendants point out that the government failed to address the specific requests each defendant made in their respective motions and assert that the government instead relied on "vague and conclusory assertions" to oppose the motions, devoting essentially one page of a five-page response to the arguments made in motions filed by three defendants.  [Doc. 85 at 1-2; Doc. 86 at 1-2; Doc. 88 at 1-2].  Defendants also offer various arguments in support of their motions and to counter the government's contentions, [Doc. 85 at 2-10; Doc. 86 at 2-7; Doc. 88 at 3-6], and these arguments have been considered in connection with evaluating the merits of the motions.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  "The purpose of a true bill of particulars is threefold: 'to inform the defendant[s] of the charge against [them] with sufficient precision to allow [them] to prepare [their] defense, to minimize surprise at trial, and to enable [them] to plead double jeopardy in the event of a later prosecution for the same offense.'"  United States

v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at
*5 (N.D. Ga. Apr. 5, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th
Cir. 1985)), adopted as modified by 2010 WL 3211029, at *7 (N.D. Ga. Aug. 11,
2010); see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)
(citations omitted); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-
TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga. Jan. 14, 2011) (citation omitted),
adopted sub nom. United States v. Chester, Criminal Action File No. 1:09-cr-320-
TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011).  Generalized discovery is
not a valid reason for seeking a bill of particulars, Colson, 662 F.2d at 1391 (citation
omitted); United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978),[3] and "[a] bill of
particulars may not be used for the purpose of obtaining detailed disclosure of the
government's case or evidence in advance of trial," Zellner, 2011 WL 530718, at *9
(citation omitted).  Moreover, defendants are not entitled to a bill of particulars
describing information which is already evident from other sources, such as
elsewhere in the indictment or in discovery.  United States v. Rosenthal, 793 F.2d
1214, 1227 (11th Cir. 1986) (citation omitted), modified on other grounds by, 801
F.2d 378 (11th Cir. 1986); see also Reddy, 2010 WL 3210842, at *5 (citation omitted).

---

[3] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding
precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209
(11th Cir. 1981) (en banc).

The "crucial question is whether the information sought is necessary, not whether it is helpful." United States v. Calhelha, 456 F. Supp. 2d 350, 365 (D. Conn. 2006) (citations and internal marks omitted).

The indictment charges that the defendants identified and procured government contracts, awarded as sole-source set-aside contracts under the SBA 8(a) program, by fraudulent means. [Doc. 1 ¶ 27]. The indictment mentions several alleged co-conspirators and their respective roles in the offenses, describes the manner and means and time frame of the conspiracy, specifies the particular contracts at issue, and tracks the statutory language of the offenses charged, informing each defendant of his or her specific offense conduct, as well as the objects of the conspiracy. See generally [Doc. 1]. Virtually all of defendants' requests seek details in the form of the specific communications, documents, and facts supporting various allegations of the indictment, see [Doc. 30-1 at 2 ¶¶ 2-7, 3 ¶ 9; Doc. 46-1 at 1-2 ¶¶ 1-3, 5-12; Doc. 47-1 at 1-2 ¶¶ 1-12], and the government correctly contends that defendants are "not entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment and discovery," United States v. Mitchell, CRIMINAL CASE NO. 1:17-CR-122-LMM-LTW, 2019 WL 6462838, at *19 (N.D. Ga. June 25, 2019) (citations omitted); see also United States v. Jackson, CRIMINAL ACTION FILE NO. 1:16-CR-427-AT-JKL-8, 2019 WL 7842416, at *3 (N.D. Ga. Aug. 29, 2019)

15

(citation omitted), adopted by 2019 WL 6769233, at *2 (N.D. Ga. Dec. 12, 2019).

Likewise, to the extent these requests seek details of the evidence the government

will present to prove the allegations of the indictment, they are not a proper

purpose of a bill of particulars, United States v. Baitcher, Criminal Action File No.

1:11-CR-536-SCJ-AJB, 2013 WL 1501462, at *2 (N.D. Ga. Mar. 22, 2013) (footnote

and citations omitted) ("A bill of particulars may be obtained to clarify an

indictment, as long as it does not seek to determine in advance the government's

proof."), adopted by 2013 WL 1501454, at *1 (N.D. Ga. Apr. 11, 2013); United States

v. Wimbley, Criminal No. 11-0019-WS, 2011 WL 3204539, at *2 (S.D. Ala. July 27,

2011) (citations omitted) ("Defendants are not entitled to a bill of particulars as a .

. . comprehensive preview of the [g]overnment's trial proof or theories."); United

States v. Perez, No. CR 106-029, 2006 WL 1737449, at *3 (S.D. Ga. June 19, 2006)

(citation omitted) ("Nor is [a bill of particulars] intended to secure for the defense

the government's explanation of its theory of the case."), adopted at *1,

particularly where the indictment describes in detail the object, manner, and

means of the alleged conspiracy and fraudulent scheme, as well as the role of each

co-conspirator in the scheme, see [Doc. 1]; United States v. Bickers, CRIMINAL

INDICTMENT. NO. 1:18-CR-98-SCJ-LTW, 2019 WL 7559292, at *8 (N.D. Ga. Sept.

17, 2019), adopted by 2019 WL 5587050, at *7 (N.D. Ga. Oct. 30, 2019).[4]

---

[4] In paragraph 2 of her motion, Hayes seeks "[t]he exact conspiratorial agreement the government alleges was agreed to by the alleged co-conspirators," [Doc. 30-1 at 2], and in her reply supporting this request, Hayes asserts that the indictment "fails to contain a section or even a paragraph addressing the object of the conspiracy," [Doc. 86 at 4], and she maintains that "[f]ailure to inform [ her] as to the object of the conspiracy she allegedly joined would result in prejudicial surprise at trial and renders her unable to meaningfully prepare a defense to the conspiracy charge," [id.]. Contrary to Hayes' contention, the indictment specifies the objects of the conspiracy in paragraph 1, alleging that the defendants conspired "to (A) defraud the United States by obtaining money from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises; and (B) execute and attempt to execute a scheme and artifice to defraud the United States and to obtain money and property from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises in the procurement of property and services as a prime contractor and a subcontractor with the United States, where the value of the contract for such property and services was $1,000,000 or more, in violation of Title 18, United States Code, Section 1031." [Doc. 1 ¶ 1]. "As applied to a charge of conspiracy, . . . the view virtually universally held is that the defendant is not entitled to particulars regarding the formation of the conspiracy; [the] exact time and place of overt acts and the names and addresses of persons present; the details concerning how and when the conspiracy was formed or when each participant entered the conspiracy." United States v. Upton, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (citations omitted); see also United States v. Leiva-Portillo, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007) (citations omitted) ("Case law is [] clear that the [g]overnment is not required to identify the exact dates or details of when a defendant or any conspirator joined or withdrew from a charged conspiracy, or specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants."), adopted at *1.

Defendants contend in their reply briefs that the government has produced an extensive amount of discovery, consisting of a terabyte of data containing millions of documents, and argue that the government cannot rely on such a large data dump to avoid providing the particulars sought in their motions. [Doc. 85 at 5-8; Doc. 86 at 2; Doc. 88 at 2]. Defendants cite <u>United States v. Alabed</u>, CRIMINAL CASE NUMBER: 1:19-CR-00089-MHC-JSA, 2019 WL 7842413, at *4-5 (N.D. Ga. Dec. 4, 2019), adopted by 2020 WL 114415 (N.D. Ga. Jan. 9, 2020), to support their requests for various particulars, <u>see</u> [Doc. 85 at 3, 6; Doc. 86 at 5; Doc. 88 at 3-5], and also contend that "the Court should require the Government to specify where in the extensive discovery the Government has provided the information for the particulars requested can be found," [Doc. 85 at 10]. However, the <u>Alabed</u> court granted only one requested particular regarding "specific notice as to the false statements and/or material omissions [defendants] allegedly made in furtherance of the conspiracy or scheme to defraud, as generally referenced in Paragraph 31 of the Indictment," 2019 WL 7842413, at *5, because the indictment "only very generally, and conclusorily" alleged that:

> When asked by the online retailers for information regarding the source of the numerous gift cards they used for their online purchases, the [d]efendants gave false and misleading answers and provided deceptive documentation—or no documentation at all—to conceal the illegal source of those gift cards and gift card numbers.

Id., at *4. The Alabed court otherwise denied the particulars requested by defendants, id., at *5, despite the fact that the government in that case, as here, relied on the assertion that much of the information requested could be found in discovery but provided "no specifics as to what information [was] included in discovery," id., at *4.[5]

Moreover, unlike in Alabed, the indictment in this case provides more than general and conclusory allegations of fraud as it identifies the particular contracts at issue and describes in detail the manner and means of the conspiracy and the fraudulent scheme, alleging that the defendants coordinated in seeking the award of sole-source set-aside 8(a) contracts from the federal government through proposals submitted by Co-Conspirator A, Flores' corporation, by preparing bogus IGCEs to ensure that Co-Conspirator A's proposal pricing would be lower than the IGCEs; preparing and procuring purported "competitive quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D, which were sham quotes that were intentionally higher than Co-Conspirator A's proposal prices and/or Envistacom's price quotes, to ensure the sole-source awards; concealing

---

[5] Defendants also cite United States v. Marchelletta, INDICTMENT NO. 1:07-CR-107-TCB/AJB, 2007 WL 9672501 (N.D. Ga. Aug. 23, 2007), adopted as modified by 2007 WL 9672547 (N.D. Ga. Sept. 11, 2007), and cases from other districts to support their argument, but to no avail. Indeed, the ruling in Marchelletta is actually contrary to the relief requested by defendants as the court denied the motion for a bill of particulars. Id., at *1.

that Flores' wife owned Co-Conspirator B, and that Flores prepared Co-Conspirator B's sham quotes for the 8(a) sole-source awards to Co-Conspirator A; concealing that Envistacom sought and procured the purported "competitive quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D; concealing that Envistacom, Carson, Hayes, and Flores prepared the IGCEs and other contract procurement documents for the 8(a) sole-source awards to Co-Conspirator A; and by making false statements, representations, and material omissions to federal government contracting officials regarding (i) the IGCEs being legitimate independent government cost estimates and (ii) Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D's quotes being "competitive," when they were either prepared by Flores in consultation with Hayes or the pricing therein was directed by Carson.  [Doc. 1 ¶ 27].  The indictment also includes detailed overt acts specifying the date and manner of communication between defendants in furtherance of the conspiracy charged in count one, [id. ¶ 28],[6] and

---

[6] In paragraph 7 of her motion, Hayes seeks "[a]ll facts supporting the claim of the existence of 'other' overt acts alleged in Paragraph 28 of the Indictment," [Doc. 30-1 at 2], and in her reply, argues that "[t]o place the burden on [ her] to wade through [the millions of pages of] discovery to determine what "other" acts the Government may consider presenting at trial is the type of prejudice that a bill of particulars should protect against," [Doc. 86 at 7].  However, a bill of particulars cannot be used to ferret out additional overt acts not listed in the indictment, as long as the indictment alleges the required number of overt acts under the statute being charged.  See Rosenthal, 793 F.2d at 1227 (citation omitted); Colson, 662 F.2d at 1391 (citation omitted); United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978)

Case 1:22-cr-00197-VMC-RGV   Document 95   Filed 11/14/22   Page 21 of 37


describes in detail in counts two and three the defendants' alleged "scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact," including by:

> a. Concealing that the [IGCEs] and other contract procurement documents were prepared by Envistacom and Co-Conspirator A; and
>
> b. Falsely representing that quotes used to support the IGCEs and Co-Conspirator A's proposal pricing were "competitive" quotes, when they were prepared by [Flores], Co-Conspirator C, or Co-Conspirator D in coordination with [Hayes and Carson], and [Flores, Carson, and Hayes'] involvement was concealed.

[Id. ¶¶ 33, 39]. The detailed allegations of the indictment, coupled with the extensive discovery produced by the government in a searchable database format, see [Doc. 84 at 2], provides "sufficient information about the nature of the charges to enable [defendants] to prepare for trial, to avoid unfair surprise, and to enable [them] to plead double jeopardy in the event of a later prosecution for the same offense," Bickers, 2019 WL 7559292, at *8 (citations omitted).

"[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge," and the "function of the bill of

---

(citation omitted); United States v. Green, No. 1:08-CR-41-SPM/AK-2, 2009 WL 2589107, at *1 (N.D. Fla. Aug. 17, 2009).

21

particulars is to reduce surprise at the charge, that is, to enable the defendant[s] to identify what [they are] alleged to have done in violation of law." United States v. Slawson, Criminal Case No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *13 (N.D. Ga. Nov. 7, 2014) (first alteration in original) (emphasis, citation, and internal marks omitted).  And, "[i]t is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant[s]." Id. (citation and internal marks omitted).  In short, because defendants "bear[] the burden of showing that the information requested is necessary and that [they] will be prejudiced without it so as to justify granting a bill of particulars," Jackson, 2019 WL 7842416, at *3 (citations and internal marks omitted), but have failed to meet their burden with respect to the particulars sought regarding details in the form of communications, documents, and facts supporting various allegations of the indictment, see [Doc. 30-1 at 2 ¶¶ 2-7, 3 ¶ 9; Doc. 46-1 at 1-2 ¶¶ 1-3, 5-12; Doc. 47-1 at 1-2 ¶¶ 1-12], their motions for a bill of particulars, [Docs. 30, 46, & 47], are **DENIED** as to those particulars.

Envistacom and Hayes seek other particulars that the government either explicitly concedes should be granted or implicitly has conceded so by offering no response opposing these requests. See generally [Doc. 84].  Specifically, Hayes requests in paragraph 1 of her motion the names of all "others" known to the government who allegedly participated in the conspiracy, as alleged in Paragraph

27 of the Indictment, and in paragraph 8, she requests the names, employers, and job titles of the "others" who allegedly aided and abetted the Major Fraud as alleged in Paragraphs 32 and 38 of the Indictment.  [Doc. 30-1 at 2-3].  In its consolidated response, the government states that it has "provided defendants with the identities of the six anonymized co-conspirators named in the indictment," [Doc. 84 at 4], conceding that Hayes is entitled to the information requested in paragraph 1 of her motion, and that concession implicitly extends to the particulars requested in paragraph 8 of her motion for the names of others who aided and abetted the offenses charged in counts two and three of the indictment, [Doc. 30-1 at 2-3], which the government shall provide to Hayes, see United States v. Goldenshtein, No. 1:10-CR-00323-TCB, 2011 WL 1321573, at *14 (N.D. Ga. Feb. 22, 2011), adopted by 2011 WL 1257147 (N.D. Ga. Apr. 1, 2011); United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264, at *9 (N.D. Ala. Mar. 3, 2004).

Similarly, Envistacom requests in paragraph 4 of its motion the identities of the company representatives who allegedly entered into agreements to defraud the United States, [Doc. 46-1 at 2], and to the extent the government has not already provided this information, which it has not opposed in its consolidated response, see generally [Doc. 84], the identities of the Envistacom representatives who allegedly entered into agreements to defraud the United States shall be disclosed to Envistacom, see United States v. King, No. 94 CR. 455 (LMM), 1997 WL 423079,

at *1 (S.D.N.Y. July 29, 1997) (holding that "in the case of a corporate defendant, which can only act through officers or employees or other agents, it is an appropriate function of a bill of particulars to identify the officers, employees or agents by reason of whose conduct the government claims and intends to prove that the corporation is criminally responsible").   Additionally, Envistacom contends that the government should be required to identify the particular documents referred to in the indictment as "other contract procurement documents" beyond the ICGEs and quotes that were allegedly concealed by defendants, [Doc. 1 ¶¶ 33, 39; Doc. 46-1 at 2 ¶ 6; Doc. 85 at 7], and the government has not addressed this specific request, see generally [Doc. 84].  The Court agrees with Envistacom that to the extent the government is relying on "other contract procurement documents" beyond the ICGEs and quotes adequately described in the indictment, those other documents must be identified and disclosed to the defendants, and to the extent the government has not already provided this information, it shall identify all "other contract procurement documents" it contends were concealed by defendants as alleged in the indictment.  Reddy, 2010 WL 3210842, at *7 (citations omitted) ("In the case of fraud or perjury, it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents.").  Accordingly, for the reasons stated, Carson's motion for a bill of

particulars, [Doc. 47], is **DENIED**, and Envistacom and Hayes' motions for a bill of particulars, [Docs. 30 & 46], are **GRANTED IN PART** and **DENIED IN PART**.

**B.**   <u>**Motions to Dismiss, [Docs. 80 & 81]**</u>

Flores and Hayes move to dismiss count one of the indictment, contending that "it is barred by the applicable five-year statute of limitations." [Doc. 80 at 1; Doc. 81 at 1]. Flores and Hayes acknowledge having entered into tolling agreements with the United States Department of Justice ("DOJ"), Antitrust Division, prior to the return of the indictment, but they contend that these agreements "did not toll the limitations period applicable to claims outside of the criminal antitrust laws," [Doc. 80 at 4; Doc. 81 at 4], and the offense of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, charged in count one "is not included in the 'subject acts' defined by the [tolling agreements]," [Doc. 80 at 3; Doc. 81 at 3]. The government has filed a consolidated response opposing the motions to dismiss, [Doc. 83], arguing that count one is timely because it falls within the terms of the tolling agreements signed by Flores and Hayes and their counsel, [<u>id.</u> at 3-8]. Hayes has filed a reply in support of her motion, [Doc. 87], which Flores has adopted, [Doc. 89], reiterating their contention that the offense charged in count one is not within the plain language of the tolling agreements.

The indictment in this case was returned on May 25, 2022, and charges in count one that the defendants engaged in a conspiracy to defraud the United

States, in violation of 18 U.S.C. § 371, which is an offense with a five-year statute of limitations.  See [Doc. 1]; see also United States v. McNair, 605 F.3d 1152, 1213 (11th Cir. 2010) ("In a conspiracy prosecution brought under § 371 the government in order to avoid the bar of the limitation period of [18 U.S.C.] § 3282 must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement.").  The conspiracy charged in count one allegedly began "no later than in or about September 2014 and continu[ed] to at least in or about November 2016," [Doc. 1 at 1], and the last overt act of the conspiracy occurred on or about October 25, 2016, [id. at 8], more than five years before the indictment was returned on May 25, 2022, and approximately seven months after the statute of limitations would have expired.  However, statutes of limitation can be extended or tolled by agreement, and during the investigation of this case, Hayes and Flores entered into tolling agreements with the DOJ Antitrust Division, so resolution of the motions to dismiss count one turns on the terms of these agreements.

On October 11, 2021, counsel for Flores signed a "Statute of Limitations Tolling Agreement" with the United States on behalf of Flores, agreeing in paragraph 5 that "the time period between September 23, 2021[,] and September 23, 2022, shall be excluded from any calculation or computation of time and shall

be tolled for the purposes of the statute of limitations period which is or might be applicable to any criminal charge."  [Doc. 81-2 at 1].  In October 2021, Hayes and her counsel signed a "Statute of Limitations Tolling Agreement" with the United States, likewise agreeing in paragraph 5 that "the time period between October 7, 2021 and April 2, 2022, shall be excluded from any calculation or computation of time and shall be tolled for the purposes of the statute of limitations period which is or might be applicable to any criminal charge," [Doc. 80-1 at 2], and on March 14, 2022, Hayes and her counsel subsequently signed an amendment to the agreement, extending the limitations period through June 7, 2022, [Doc. 80-2].

The two tolling agreements have essentially identical terms, with both providing in paragraph 3 that the "United States is conducting a grand jury investigation in the Northern District of Georgia into possible criminal antitrust and related violations of federal laws with respect to United States government contracting ('subject acts')."  [Doc. 80-1 at 2; Doc. 81-2 at 1].  These tolling agreements further state in paragraph 4 that the "United States is considering what actions to take with respect to" Flores and Hayes "in connection with possible violations of federal criminal law relating to the subject acts," and that it is in the interest of all the parties "that the United States have sufficient time to make reasoned determinations concerning these matters and that the parties have sufficient time to continue discussions concerning the matters."  [Doc. 80-1 at 2;

Doc. 81-2 at 1].  In paragraph 6 of the agreements, Flores and Hayes did "not waive any defenses [they] may have with respect to any criminal charge in connection with the subject acts, including defenses based upon the operation of any statute of limitations prior to [the dates specified]," but agreed "that the period tolled by [the agreements] must be excluded from any computation of the time for the purposes of any statute of limitations defense of [Flores and Hayes] to any criminal charges."  [Doc. 80-1 at 2; Doc. 81-2 at 1].

Flores and Hayes argue that their agreements specify "that the limitation period is tolled only as to the narrow category of antitrust **and** related violations of federal laws with respect to United States government contracting ('subject acts')."  [Doc. 80 at 3 (internal marks omitted); Doc. 81 at 3].  Specifically, they assert that "[t]he use of the dependent clause 'and' rather than, for example, the independent term 'or' means that [their tolling agreements apply] only where both items occur, as required by the applicable rules of grammar."  [Doc. 80 at 3 (emphasis and citations omitted); Doc. 81 at 3 (emphasis and citations omitted)]. Consequently, Flores and Hayes contend that their agreements "did not toll the limitations period applicable to claims outside of the criminal antitrust laws," and since none of the allegations of the indictment assert that they violated any federal

antitrust laws, count one must be dismissed because it is time-barred. [Doc. 80 at 4; Doc. 81 at 4].[7]

The government responds that defendants' arguments are contrary to the plain language of the tolling agreements and their use of the word "and" in paragraph 3. [Doc. 83 at 5]. In particular, the government first points out that paragraph 5 of the agreements excludes the time periods specified "from any calculation or computation of time and shall be tolled for the purposes of the statute of limitations period which is or might be applicable to *any criminal charge*." [Id. at 4]. Thus, the government asserts that "[d]efendants' arguments concerning the meaning of the prefatory paragraph 3 are beside the point," [id. at 5], but "even assuming paragraph 3 . . . informs the scope of paragraph 5, the [d]efendants' arguments rest on a mischaracterization of the word 'and' in that paragraph," [id.]. Specifically, the government argues that "[t]he use of the word 'and' in [paragraph 3] links independent ideas; it does not link concepts that are dependent on one another." [Id.]. In other words, the government maintains that paragraph 3 of the agreements described the scope of the investigation and identified "two categories of potential charges [d]efendants could face: (1) possible criminal antitrust charges, and (2) possible charges for related violations of federal law." [Id.]. The

---

[7] Defendants acknowledge that the remaining counts of the indictment "are not subject to dismissal on statute of limitations grounds." [Doc. 87 at 6 n.2].

government further asserts that "[d]efendants' argument that the tolling agreement only is valid if the government charged both an antitrust offense <u>and</u> a related violation of federal law is unduly narrow and illogical" and contrary to public interest by infringing upon prosecutorial discretion, as the fact that "the government elected not to bring antitrust charges does not mean that it was foreclosed from bringing other charges." [<u>Id.</u> at 6].

In reply, Hayes and Flores assert that they "agreed to toll the statute of limitations solely as to claims related to violations of the antitrust laws," and that the government's argument "ignores black letter contract law and the wording of the [agreements] it drafted and executed, which expressly tolled only 'antitrust and related violations of federal laws with respect to government contracting.'" [Doc. 87 at 1]. Defendants argue that the "[g]overnment asks the Court to read the second sentence of paragraph five of the [agreements] in a vacuum, ignoring the language of the [agreements] as a whole," [<u>id.</u> at 4], and alternatively, focuses only on the word "and" in paragraph 3 rather than the phrase "and related violations," [<u>id.</u> at 6], but when the agreements are construed as a whole, applying the plain meaning of the phrase "antitrust and related violations," the agreements "unambiguously toll[] only claims under or related to the antitrust laws," [<u>id.</u>]. And, even if the language of the agreements is ambiguous, defendants urge the Court to apply "the statutory rules of construction" and, among other things,

"strongly" construe any ambiguities against the government since it drafted the agreements.  [Id. at 7].

Because the tolling agreements are contracts, they must "be interpreted like any other contract."  United States v. Brattain, No. CR 18-20107, 2019 WL 197330, at *2 (E.D. Mich. Jan. 14, 2019).  "Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent."  Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1104 (11th Cir. 2014).  Thus, "the Court must construe contracts as written absent an ambiguity in their text."  United States ex rel. Dildine v. Pandya, No. 1:13-CV-03336-LMM, 2019 WL 8277242, at *3 (N.D. Ga. Dec. 19, 2019) (citing Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc., 707 S.E.2d 369, 371 (Ga. 2011) (explaining that if the language of the contract is unambiguous, "the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning")).

The Court begins with paragraph 5 of the agreements because it contains the operative tolling language, explicitly stating that the specified periods of time "shall be excluded from any calculation or computation of time and shall be tolled for the purposes of the statute of limitations period which is or might be applicable to any criminal charge."  [Doc. 80-1 at 2; Doc. 81-2 at 1].  Paragraph 5 includes no

reference to the "subject acts" defined in paragraph 3 and mentioned in paragraphs 4 and 6 of the agreements and unambiguously tolls "the statute of limitations period which is or might be applicable to ***any criminal charge***." [Id. (emphasis added)]. Thus, Flores and Hayes explicitly agreed to toll the statute of limitations period applicable to "any criminal charge" without tying it to the "subject acts" under investigation. This conclusion is reinforced by the plain language of paragraph 6 of the agreements in which defendants did "not waive any defenses [they] may have with respect to *any criminal charge in connection with the subject acts*, including defenses based upon the operation of any statute of limitations prior to [the dates specified]," but again agreed "that the period tolled by [the agreements] must be excluded from any computation of the time for the purposes of *any statute of limitations defense* of [Flores and Hayes] *to any criminal charges*." [Id. (emphasis added)]. Thus, the plain language of paragraph 6 reflects that the parties selectively applied the "subject acts" provision with respect to defenses existing prior to the dates specified in the agreements but omitted it as a limitation regarding the tolling of the statute of limitations for "any criminal charge" for the period tolled. [Id.]. Because Flores and Hayes explicitly agreed to toll the statute of limitations period applicable to "any criminal charge" without tying it to the "subject acts" under investigation, their motions to dismiss count one are due to be denied.

Moreover, even were the Court to conclude that there is ambiguity in the agreements, a reasonable reading of the terms of the entire agreement reveals that defendants' agreements to toll the statute of limitations encompasses the offense charged in count one of the indictment of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  Paragraph 3 of the agreements specifies that the "United States is conducting a grand jury investigation in the Northern District of Georgia into possible criminal antitrust and related violations of federal laws with respect to United States government contracting ('subject acts')."  [Doc. 80-1 at 2; Doc. 81-2 at 1].  Paragraph 4 of the agreements further indicates that the "United States is considering what actions to take with respect to" Flores and Hayes "in connection with possible violations of federal criminal law relating to the subject acts," and as previously discussed, in paragraph 5 of the agreements, Flores and Hayes agreed that the specified periods of time "shall be excluded from any calculation or computation of time and shall be tolled for the purposes of the statute of limitations period which is or might be applicable to any criminal charge."  [Doc. 80-1 at 2; Doc. 81-2 at 1].  In reading these provisions together, the Court concludes that the offense charged in count one falls within the scope of the "subject acts" defined in the agreements because it is a "related violation[] of federal laws with respect to United States government contracting" that the parties acknowledged was under grand jury investigation along with "possible criminal

antitrust" violations. [Doc. 80-1 at 2; Doc. 81-2 at 1]. In other words, the offense of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, in connection with procuring government contracts, awarded as sole-source set-aside contracts under the SBA 8(a) program, by the fraudulent means described in the indictment involving alleged collusion between the individual defendants, their companies, and various co-conspirators clearly falls within the scope of the "subject acts" defined in paragraph 3 as "possible criminal antitrust and related violations of federal laws with respect to United States government contracting." [Doc. 80-1 at 2; Doc. 81-2 at 1].

In their reply, defendants assert that they "agreed to toll the statute of limitations solely as to claims related to violations of the antitrust laws," [Doc. 87 at 1], but this contention ignores the plain language of the agreements, including the sentence in paragraph 3 that defines the "subject acts" as "possible criminal antitrust and related violations of federal laws with respect to United States government contracting," [Doc. 80-1 at 2; Doc. 81-2 at 1]. Under defendants' interpretation of the agreements, the words "and related violations of federal laws" are superfluous if, as they contend, the parties only "agreed to toll the statute of limitations solely as to claims related to violations of the antitrust laws." [Doc. 87 at 1]. If defendants were correct in their interpretation, the sentence would simply have stated that the United States is conducting a grand jury

investigation in the Northern District of Georgia into possible criminal antitrust violations, but that is not what paragraph 3 provides.  Instead, the paragraph describes a broader scope of the grand jury investigation beyond solely violations of the antitrust laws, specifying that it includes "related violations of federal laws with respect to United States government contracting," and count one of the indictment charges a violation of federal law with respect to United States government contracting, which squarely falls within the "subject acts" of the grand jury investigation that also included "possible criminal antitrust" violations of federal laws.

Defendants complain about various aspects of the government's argument, [Doc. 87 at 4-7], including that its interpretation of the language of the agreements is too narrowly focused on the word "and," but the Court need not address these arguments in detail as it has construed the agreements in their entirety and finds unpersuasive the arguments and interpretation advanced by defendants.  Indeed, defendants' contentions about the government's interpretation of the agreements could be applied to many of their own arguments as defendants focus on isolated terms and phrases while ignoring other aspects of the agreements unfavorable to their position.  For the reasons discussed, the Court finds that count one is not barred by the statute of limitations because Flores and Hayes entered into agreements that tolled the statute as to the offense of conspiracy to defraud the

United States, in violation of 18 U.S.C. § 371, as charged in count one. Accordingly, it is **RECOMMENDED** that the motions to dismiss count one, [Docs. 80 & 81], be **DENIED**.

C.     **Motions to Set a Trial Date, [Docs. 54, 55, 56, 90, 91, 92, & 93]**

On July 11, 2022, Envistacom filed a motion to set a trial date in this case to commence on November 28, 2022, [Doc. 54], which Carson and Hayes have moved to adopt and join, [Docs. 55 & 56]. On October 14, 2022, Envistacom moved to amend its motion to set a trial date, [Doc. 90], requesting that the Court "set a trial date for this case to commence January 11, 2023," [id. at 1]. Carson, Hayes, and Flores have moved to adopt and join the amended motion to set a trial date. See [Docs. 91, 92, & 93]. These motions are due to be **DEFERRED** to the District Judge who will conduct the trial of this case.

### III.  CONCLUSION

For the foregoing reasons, Flores' motion to adopt Hayes' reply in support of his motion to dismiss, [Doc. 89], is **GRANTED**; Carson's motion for a bill of particulars, [Doc. 47], is **DENIED**; Envistacom and Hayes' motions for a bill of particulars, [Docs. 30 & 46], are **GRANTED IN PART** and **DENIED IN PART**; the motions to set a trial date, [Docs. 54, 55, 56, 90, 91, 92, & 93], are hereby **DEFERRED** to the District Judge; and it is **RECOMMENDED** that the motions to dismiss count one, [Docs. 80 & 81], be **DENIED**.

There are no other pending motions before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial as to all defendants.

**IT IS SO ORDERED** and **RECOMMENDED,** this 14th day of November, 2022.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE